## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW WADE HURST, | ) | CASE NO. 3:23-CV-00227-JRK |
| | ) | |
| Plaintiff, | ) | JAMES R. KNEPP II |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL |
| SECURITY, | ) | ARMSTRONG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Matthew Wade Hurst ("Mr. Hurst") seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (*See* ECF non-document entry dated February 6, 2023). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.     PROCEDURAL HISTORY

On October 16, 2020, Mr. Hurst filed his application for SSI, alleging an onset date of January 1, 2015. (Tr. 168). Mr. Hurst's application related to his back surgeries; knee problems; torn bicep extender tendon; mental conditions; arthritis; depression; and anxiety. (Tr. 184).

The Social Security Administration ("SSA") denied Mr. Hurst's application initially and upon reconsideration. (Tr. 71, 81). Mr. Hurst requested a hearing before an administrative law judge ("ALJ"). (Tr. 118). The ALJ held a telephonic hearing on January 7, 2022, at which Mr. Hurst was represented by counsel. (Tr. 31). Mr. Hurst testified, as did an independent vocational

expert ("VE"). On April 7, 2022, the ALJ issued a written decision, finding that Mr. Hurst was not disabled. (Tr. 12). The ALJ's decision became final on December 7, 2022, when the Appeals Council declined further review. (Tr. 1).

On February 6, 2023, Mr. Hurst filed his Complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Mr. Hurst asserts the following assignments of error:

(1)     The ALJ's RFC was not supported by substantial evidence as the ALJ erred when she failed to find persuasive the opinion of the treating source and incorporate the stated limitations into her RFC.

(2)     The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF No. 8, PageID # 695).

## III.   BACKGROUND

### A.   <u>Personal, Educational, and Vocational Experience</u>

Mr. Hurst was born in 1978 and was 36 years old on the alleged onset date.  (Tr. 168). He has a high school degree and attended some college. (Tr. 40). He has never married. (Tr. 169). In his function report, Mr. Hurst stated that he has three children. (Tr. 192). He has prior work experience working at Goodwill and as a fast-food assistant manager. (Tr. 40, 42).

### B.   <u>Relevant Hearing Testimony</u>

#### 1.   *Mr. Hurst's Testimony*

Mr. Hurst testified that had two fusions in his back, and that the screw snapped in his left side approximately three years ago. (Tr. 46). Mr. Hurst also testified that the screw caused nerve damage, which he deals with on a daily basis. *Id*. Mr. Hurst further testified that he needs to have another back surgery to get four discs fused. *Id*.

Mr. Hurst testified that he has daily issues with his lower back above his tailbone. (Tr. 45, 47). He testified that he experiences pain all the time, but that he is in more pain at some times

than others, including when he spends too much time on his feet. (Tr. 47). He testified that if he stands for more than ten or fifteen minutes, he needs to sit down to attempt to and stretch his back, and that he sometimes needs to lay down on his side. (Tr. 54). He further testified that he typically needs to sit for at least half an hour before he can stand again. *Id*. Mr. Hurst also testified that his left hip locks up on him sometimes and is very stiff. (Tr. 47-48).

Mr. Hurst testified that he currently sees a chiropractor as frequently as he can. (Tr. 48). He also testified that he has a TENS unit, which provides electronic stimulation, and which he wears daily, along with a back brace. (Tr. 48). *Id*. Mr. Hurst also testified that he sometimes uses ice packs, heating blankets, and a heating pad. (Tr. 53).

Mr. Hurst testified that he is currently homeless. (Tr. 43). He testified that he lives with whomever he can and sometimes stays in shelters. (Tr. 44). He also testified he does not generally perform household tasks. *Id*. He testified that he is trying to get a place of his own because his doctors cannot perform additional back surgery until he has a home address for purposes of performing rehabilitation. (Tr. 46).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Mr. Hurst's age, education, and job history who was limited to light work but could: never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs, crouch, stoop, and kneel; frequently balance; occasionally reach overhead with his right upper extremity; frequently reach to the front and push in or pull with his right extremity; occasionally push and/or pull or operate foot controls with his bilateral lower extremities; never be exposed to more than moderate noise; never work around vibrations, unprotected heights, unprotected moving machinery, or heavy equipment; never perform commercial driving; understand, remember, and carry out simple routine tasks, but not at a production rate pace; and make judgments on simple work and respond appropriately usual

work situations and occasional changes in a routine work setting. (Tr. 59-61). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a mail clerk, electronics worker, and photocopy machine operator. (Tr. 61, 64).

The ALJ next asked the VE to consider a hypothetical individual with the same characteristics and limitations who would also be limited to sedentary work. (Tr. 61). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a table worker, patcher, and touch-up screener. (Tr. 62). Finally, the ALJ asked if the hypothetical individual could perform work if the hypothetical individual would need to alternate their position every 30 minutes for one to two minutes so long as the individual would not be off task or need to leave their workstation. (Tr. 62). The ALJ responded that the hypothetical individual could still perform work as a table worker, patcher, and touch-up screener. *Id*. The VE also testified that it would be work-preclusive if the hypothetical individual would be absent from work more than two days per month or off task more than 15% of the time. (Tr. 63).

In response to a question from Mr. Hurst's counsel, the VE testified that it would be work preclusive if the hypothetical individual could only sit for two hours out of an eight-hour workday and could only sit or walk for two hours out of an eight-hour workday. (Tr. 64-65).

**C. Relevant Opinion Evidence[1]**

*1. Nathan Phillips, D.C.*

On August 28, 2020, Dr. Phillips, Mr. Hurst's chiropractor, completed a physician medical source statement. (Tr. 250). Dr. Phillips opined that Mr. Hurst's symptoms included low back

---

[1] At the administrative level, Mr. Hurst alleged both physical and mental impairments. In this proceeding, Mr. Hurst challenges only the ALJ's determination with respect to his physical impairments. Accordingly, I summarize only evidence regarding those impairments.

4

pain, radicular pain down both legs, and burning pain in both legs. *Id*. He further opined that Mr. Hurst had severe pain in his low back and right and left hip joint constantly, with flare-ups that exacerbated his pain. *Id*. When asked to identify clinical findings and objective signs, Dr. Hurst identified hypertonicity of the lumbar paraspinals and decreased range of motion in the lumbar spine in all directions. *Id*.

Dr. Phillips opined that Mr. Hurst could sit for 15 minutes at a time and could stand for five minutes at a time. (Tr. 251). He further opined that Mr. Hurst could sit, stand, or walk for fewer than two hours in an eight-hour workday; that Mr. Hurst would need to walk around for eight minutes every 15 minutes; and that Mr. Hurst would need unscheduled 15-minute breaks 10 to 15 times every eight-hour workday. *Id*. Dr. Phillips also opined that Mr. Hurst would need to use a cane or other hand-held assistive device for standing (but not walking) as a result of his imbalance, pain, and weakness. (Tr. 252). He further opined that Mr. Hurst could rarely lift fewer than 10 pounds and could never lift 10 pounds or more. *Id*. Finally, Dr. Phillips opined that Mr. Hurst was likely to be off-task 25 percent or more of a typical workday. *Id*. The ALJ found that Dr. Phillips' opinions were "generally inconsistent with and unsupported by the record as a whole" and were "unpersuasive." (Tr. 23).

### 2. Dallin Tonks, D.O.

On December 19, 2020, Dr. Tonks performed a consultative medical examination in connection with Mr. Hurst's disability claim. (Tr. 382). Dr. Tonks noted that Mr. Hurst was alert, in no acute distress, did not use an assistive device or have a prescription for one, and had a normal gait. (Tr. 383). Dr. Tonks further noted that Mr. Hurst did not sit comfortably throughout the exam and had restriction in his right shoulder and lumbar spine. *Id*. Dr. Tonks noted that Mr. Hurst had significant pain with palpitation over his right shoulder and lower back. *Id*. Dr. Tonks also noted that Mr. Hurst had a positive left seated leg raise bilaterally. *Id*. Dr. Tonks diagnosed Mr. Hurst

with arthritis of the spine, joints, and hands, as well as depression and anxiety. *Id*. He opined that Mr. Hurst did appear to have limitations with standing, walking, lifting, carrying, sitting, and handling. (Tr. 384). Dr. Tonks further opined that Mr. Hurst's medical conditions may improve with treatment. *Id*. The ALJ found that Dr. Tonks opinions were "only slightly persuasive" because his assessments were vague and did not include any specific functional limitations. (Tr. 23).

### 3.    *Ryan O. Lakin, M.D.*

On May 25, 2021, Dr. Lakin performed an independent medical evaluation of Mr. Hurst in connection with his disability claim. (Tr. 448). During the examination, Mr. Hurst reported that he was able to perform simple cooking, shopping, cleaning, and driving. *Id*. Mr. Hurst also reported that he could walk through a shopping mall with frequent breaks, could stand for 10-15 minutes before needing a break, could climb five stairs but had difficulty climbing 20, and could not sit through a movie. *Id*.

Dr. Lakin opined that Mr. Hurst's range of motion in his right shoulder and dorsolumbar spine was decreased, and that Mr. Hurst complained of pain with range of movement in his right shoulder, lumbar spine, and bilateral knees. (Tr. 449). Dr. Lakin noted no redness, swelling, joint enlargement, muscle wasting, scoliosis, or anatomic deformity, other than surgical scars in Mr. Hurst's lumbar spine and right shoulder. *Id*. Dr. Lakin also noted that Mr. Hurst's straight leg raise and Romberg tests were negative, and that he had no spasm with passive range of motion. *Id*.

Dr. Lakin noted that Mr. Hurst moved with a slow, guarded gait and had a slight limp favoring his left leg. (Tr. 455). Dr. Lakin also noted that Mr. Hurst had no trouble getting on and off the exam table. (Tr. 450). Mr. Hurst displayed 5/5 strength in all extremities, was able to perform reciprocating heel-to-toe and tandem walking, could stand on one leg by itself, and had a normal gait. *Id*. His reflexes were 2+/4 at the bilateral biceps, patellar, and Achilles. *Id*. Dr. Lakin diagnosed Mr. Hurst with a history of lumbar spine surgery and lumbar spine fusion; bilateral

lower extremity sciatica; chronic right shoulder pain with history of injury; chronic bilateral knee pain with history of injury to the left knee; and depression and anxiety. *Id*. He opined that Mr. Hurst could lift and carry five to ten pounds frequently and lift and carry 10-20 pounds occasionally. *Id*. Dr. Lakin further opined that Mr. Hurst could sit continuously with regular breaks and could stand and walk occasionally with regular breaks. *Id*.

The ALJ found that Dr. Lakin's opinions were generally consistent with and supported by the record as a whole and were generally persuasive. (Tr. 23). However, the ALJ also found that the record supported further limitations than those Dr. Lakin had identified, which the ALJ included in Mr. Hurst's RFC. *Id*.

### 4. *State Agency Medical Examiners*

On December 29, 2020, Maureen Gallagher, D.O., a state agency medical examiner, opined that Mr. Hurst could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds. (Tr. 77). Dr. Gallagher also opined that Mr. Hurst could stand, walk, or sit for approximately six hours in an eight-hour workday. (Tr. 78). Dr. Gallagher further opined that Mr. Hurst could never climb ladders, ropes, or scaffolds; could frequently balance and crouch; and could occasionally stoop, kneel, and crawl. *Id*. Dr. Gallagher also opined that Mr. Hurst was limited to frequent reaching overhead and in front of his body with his right arm. *Id*. Finally, Dr. Gallagher opined that Mr. Hurst should avoid all exposure to unprotected heights and heavy machinery. (Tr. 79). On July 24, 2021, Gail Mutchler, M.D., concurred in Dr. Gallagher's findings on reconsideration. (Tr. 89).

The ALJ found that the opinions of the state agency medical examiners were only somewhat consistent with and supported by the record as a whole and were only somewhat persuasive. (Tr. 23-24). In particular, the ALJ found that the record supported further limitation to a range of sedentary work due to pain in Mr. Hurst's low back and knees. (Tr. 24). The ALJ also

found that other limitations were warranted, including limitations on noise levels, as well as allowing a change of positions to help with Mr. Hurst's pain symptoms. *Id*.

### 5. *Mr. Hurst's Function Report*

On December 4, 2020, Mr. Hurst completed a Function Report in connection with his application for SSI. (Tr. 191). Mr. Hurst stated that he was homeless and lived wherever he could, including with friends, family, and at shelters. *Id*. Mr. Hurst stated that the pain in his back and knees affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb, and that he cannot walk more than 20 to 30 steps before needing to rest for 20 minutes. (Tr. 196). Mr. Hurst also stated that he cannot sleep through the night because lying down causes him significant pain. (Tr. 192) Mr. Hurst further stated that he has difficulty putting on socks without assistance and cannot wash his legs or feet without a shower chair. *Id*. He also stated that his back makes it painful for him to use the bathroom. *Id*. Mr. Hurst further stated that he needs to sit to perform most household chores, but that he cannot sit for long periods because of back pain. (Tr. 193). Mr. Hurst stated that he travels daily, and that he will walk, ride in a car, ride a bicycle, or use public transportation. (Tr. 194). He also stated that he uses crutches, a cane, knee braces, and heel lifts. (Tr. 197).

### D. <u>Relevant Medical Evidence</u>

On October 28, 2019, Mr. Hurst underwent chiropractic treatment at Sandusky Medical & Wellness Center. (Tr. 405). Mr. Hurst was diagnosed with cervical disc displacement, disc degeneration, and spondylosis without myelopathy or radiculopathy. *Id*. Palpitation revealed areas of spasm, hypomobility, and end point tenderness indicative of subluxation. *Id*. Mr. Hurst had acupuncture performed. *Id*. Mr. Hurst continued to receive chiropractic and acupuncture treatment at Sandusky Medical & Wellness Center through March of 2021. (Tr. 392-406). During those visits, he rated his discomfort level as between six and eight out of ten. *Id*.

Mr. Hurst underwent physical therapy at Sandusky Wellness Center from August 3, 2020 through March 25, 2021 and July 2, 2021 through January 5, 2022. (Tr. 408-41, 617-71). On September 3, 2020, it was noted that Mr. Hurst was demonstrating improvements in outcome measure score, pain levels, and right should range of movement. (Tr. 421). However, he showed no change in lumbar range of movement or strength levels, and his right shoulder flexion and internal rotation remained painful at end range. *Id*. His internal rotation was severely restricted due to pain. *Id*.

On August 24, 2020, Mr. Hurst presented to Mercy Health for evaluation of his right hip pain. (Tr. 316). Mr. Hurst reported that he had been experiencing pain in his anterior and posterior right hip for the past year, which typically flared up for one or two days every three to four weeks. *Id*. Mr. Hurst stated that the pain was worse with walking, sitting for long periods of the time, or abduction of the leg. *Id*. It was noted that Mr. Hurst was limping. (Tr. 319). It was also noted that he had 5/5 strength in his lower extremities, pain with Faber, and no pain with hip compression. *Id*. The treating physician diagnosed Mr. Hurst with hip pain, chronic bilateral low back pain, status post lumbar spinal fusion, and anxiety. (Tr. 319-20). She prescribed meloxicam and noted that Mr. Hurst would try a chiropractor, with physical therapy to follow if he did not see improvement from chiropractic treatment. *Id*.

On September 9, 2020, Mr. Hurst underwent an MRI on his right hip. (Tr. 256). The MRI revealed osteochondroma with mild mass effect on the adjacent obturator canal, mild degenerative changes in his right hip, and bilateral greater trochanteric bursitis. *Id*.

On September 21, 2020, Mr. Hurst had a follow-up visit at Mercy Health. (Tr. 331). Mr. Hurst reported that his hip pain was still present but not an everyday occurrence. *Id*. Mr. Hurst stated that when his hip was acting up, it felt like it was deeply bruised. *Id*. He also reported that his episodes of hip pain lasted a few days. *Id*. On examination, Mr. Hurst was positive for back

pain and gait problems, but negative for arthralgias and myalgias. *Id*.

On November 19, 2020, Mr. Hurst had another follow-up visit at Mercy Health. (Tr. 364). He reported that he was in a lot of pain as a result of his back. (Tr. 364). He also reported that he had been using heat on his back, along with back and leg stretches and exercises. *Id*. On examination, Mr. Hurst was negative for arthralgias and myalgias but did have sciatica. *Id*. The treating physician prescribed medication for Mr. Hurst's bilateral sciatica and chronic bilateral low back pain. (Tr. 368).

On December 3, 2020, Mr. Hurst underwent a consultative psychological examination. (Tr. 376). It was noted that Mr. Hurst walked unassisted but was somewhat hunched over. (Tr. 377). It was further noted that Mr. Hurst made grunting noises getting out of his seat and sitting down, but that he did not appear to be in any physical distress throughout the evaluation once he was seated. *Id*.  Mr. Hurst reported that he did the cooking, cleaning, and laundry when he was at home. *Id*.

On March 25, 2021, Mr. Hurst had a follow-up visit at Sandusky Medical & Wellness Center for chiropractic treatment. (Tr. 392). Mr. Hurst reported that his left lumbar, lumbar, right sacroiliac, left sacroiliac, sacral, and lower thoracic areas felt worse since his last visit. *Id*. He rated his discomfort as an eight out of ten. *Id*. At a physical therapy examination on the same day, it was noted that his lumbar range of motion was within functional limits with the exception of flexion, which was limited to 60 degrees with end range pain. (Tr. 408). Internal rotation was severely restricted due to pain, and his right shoulder flexion remained painful at the end of the range. (Tr. 409). He rated his current pain as a five out of ten in his lumbar region with radicular symptoms in both lower extremities, ranging from a four out of ten to nine out of ten. (Tr. 408). Mr. Hurst's rehab potential was rated "good." (Tr. 409).

On May 7, 2021, Mr. Hurst had another follow-up visit at Mercy Health. (Tr. 498). Mr. Hurst reported that he was undergoing acupuncture and chiropractic treatment for his bilateral

sciatica. *Id*. Mr. Hurst also reported that he had been experiencing ongoing right knee pain for several months. *Id*. He reported that he had seen an orthopedist for a torn meniscus six months previously and been told that he needed surgery. *Id*. It was noted that Mr. Hurst's x-ray showed mild arthritic changes and that he would be following up with an orthopedist in several weeks. *Id*.

On May 25, 2021, x-rays of Mr. Hurst's right shoulder showed mild degenerative arthritis at the right acromioclavicular joint and prominent degenerative sclerosis. (Tr. 456). On the same day, x-rays of Mr. Hurst's left knee showed minor degenerative spurring about the medical compartment joint space and moderate effusion that was out of proportion to fairly minor arthritis. (Tr. 457).

Mr. Hurst had a chiropractic visit on January 5, 2022, at which he rated his discomfort in his lumbar region as an eight out of ten. (Tr. 617).

## IV.    THE ALJ'S DECISION

The ALJ first determined that Mr. Hurst had not engaged in substantial gainful activity since September 28, 2020, the date of his application. (Tr. 17). The ALJ further determined that Mr. Hurst had the following severe impairments: lumbar degenerative disc disease/L4-5 compression fracture, status-post surgery; right hip osteoarthritis; bilateral greater trochanteric bursitis; right knee osteoarthritis with effusion; left knee effusion and osteoarthrosis; right shoulder, status-post rotator cuff surgery, AC osteoarthritis and greater tuberosity sclerosis; and left ear sensorineural hearing loss. (Tr. 18). However, the ALJ also determined that none of Mr. Hurst's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. (Tr. 20).

The ALJ next determined that Mr. Hurst had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds or crawl;

occasionally climb ramps and stairs, crouch, kneel, and stoop; and frequently balance. He must be able to alternate positions, at his option, every 30 minutes for 1-2 minutes so long as he is not off task or has to leave the vicinity of the workstation. With the dominant right upper extremity, he can occasionally reach overhead and frequently reach to the front and push and/or pull. With the bilateral lower extremities, he can occasionally push and/or pull or operate foot controls. He cannot be exposed to more than moderate noise as defined in the Dictionary of Occupational Titles. He cannot work around vibrations, unprotected heights, unprotected moving mechanical machinery, or heavy equipment. He cannot perform any commercial driving. The claimant can understand, remember, and carry out simple, routine tasks but not a production rate pace such as required working on an assembly line or conveyor belt. He can make judgments on simple work and respond appropriately to usual work situations and occasional changes in a routine work setting.

*Id*.

The ALJ next determined that Mr. Hurst was unable to perform any past relevant work. (Tr. 24). The ALJ determined, however, that jobs existed in significant numbers in the national economy that Mr. Hurst could perform, including work as an inspection table worker, assembly patcher, and inspection touch-up screener. (Tr. 25). Accordingly, the ALJ found that Mr. Hurst was not disabled. *Id*.

## V.    LAW & ANALYSIS

### A.    Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

**B.**    **Standard for Disability**

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.

20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the RFC, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which [the ALJ] is relying, and [the ALJ] may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17 (quotation omitted).

At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g); *see Abbott*, 905 F.2d at 923.

### C.  Analysis

Mr. Hurst argues that the ALJ erred in two respects: (1) failing to incorporate restrictions that Dr. Phillips identified in his opinion into Mr. Hurst's RFC; and (2) failing to properly evaluate Mr. Hurst's subjective complaints of pain. For the reasons set forth below, I conclude that Mr. Hurst's assignments of error are without merit.

### 1.  *The ALJ's Evaluation of Dr. Phillips' Opinion*

Mr. Hurst first argues that the ALJ's RFC was not supported by substantial evidence because the ALJ filed to find the opinion of Dr. Phillips persuasive and failed to incorporate limitations that Dr. Phillips identified into Mr. Hurst's RFC. In particular, Mr. Hurst argues that the ALJ erred in failing to incorporate Dr. Phillips' opinions that Mr. Hurst: could sit, stand, or walk for fewer than two hours per day; would need to walk around for eight minutes at 15-minute intervals; would need 10 to 15 additional 15-minute breaks per day; could rarely lift fewer than 10 pounds; would be off task 25% or more per workday; and would miss more than four days of work per month. (Tr. 250-53).

Because Mr. Hurst filed his disability claim after March 27, 2017, the "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 416.927; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809 (N.D. Ohio Mar. 31, 2021). Instead, the current

regulations stated that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 416.920c(c). Section 416.920c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 416.920c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id*.

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 416.920c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 416.920c(c)(2). "As long as the ALJ discussed the supportability and consistency of the opinion and supported [the ALJ's] conclusions with substantial evidence within his decision, the Court will not disturb [the ALJ's] decision." *Njegovan v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022).

Here, the ALJ found Dr. Phillips' opinions unpersuasive, stating:

> These opinions are generally inconsistent with and unsupported by the record as a whole and are found unpersuasive. As noted previously, objective findings of record do not support the extent of limitations opined by Mr. Phillips, including examinations showing normal strength, tone, and reflexes. While the record does support some limitations, including imaging studies demonstrating degenerative changes, Mr. Phillips does not provide any substantive support for his opinions. There is also no explanation for the use of an assistive device and the evidence, for the reasons noted above, does not support the need for such a device.

(Tr. 23).

The ALJ's opinion adequately addressed both the supportability and consistency of Dr. Phillips' opinion. First, with respect to supportability, the ALJ noted that Dr. Phillips "does not provide any substantive support for his opinions" and provided "no explanation for the use of an assistive device." Courts have held that an ALJ properly addresses the supportability of a medical opinion where the ALJ notes that the physician does not provide medical support for his or her opinions. *See Golden*, 2018 WL 7079506 at *13 (holding that ALJ properly addressed supportability factor by noting that physician did not provide any support for his opinions and that opinions were inconsistent with physician's own treatment notes); *Dawson v. Comm'r of Soc. Sec.*, No. 4:22-CV-00304, 2023 WL 6794476, at *17 (N.D. Ohio Oct. 13, 2023) (holding that ALJ addressed supportability factor by noting that treating source did not explain how claimant's treatment supported limitations that treating source had identified); *Lyons v. Kijakazi*, No. 1:20-cv-1567, 2022 WL 1064070, at *7 (N.D. Ohio Jan. 10, 2022), *report and recommendation adopted sub nom.*, 2022 WL 610762 (N.D. Ohio Mar. 1, 2022) (holding that ALJ properly discounted opinion of treating physician where physician offered no supporting explanation and did not identify objective medical evidence to support limitations assessed).

In addition, as the Commissioner argues, Dr. Phillips expressed his opinions in a "checkbox" form, in which he merely checked boxes or circled numbers indicating Mr. Hurst's

17

restrictions without providing substantive explanations as to how Dr. Phillips arrived at those restrictions. (Tr. 251-53). The Sixth Circuit has held that a checkbox opinion without explanation is "patently deficient." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (finding that these types of opinions are "'weak evidence at best' and meet[] [the Sixth Circuit's] patently deficient standard") (citation omitted). While the ALJ did not specifically note the checkbox nature of Dr. Phillips' opinion when discounting it, courts in this district have held that a checkbox form may be inherently deficient even where the ALJ does not "expressly cite the unsupported checkbox form as a basis." *Gallagher v. Berryhill*, No. 5:16-cv-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017) (citing *Hernandez*), *report and recommendation adopted*, 2017 WL 2791106 (N.D. Ohio June 27, 2017); *see also Hunt v. Comm'r of Soc. Sec.*, No. 1:21-CV-00075-DAR, 2022 WL 4599246, at *3 (N.D. Ohio Sept. 29, 2022) (finding checkbox opinion was inherently deficient even when ALJ did not cite checkbox form as basis); *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018) (finding checkbox opinion "even when the ALJ did not specifically call attention to it in the decision"). The checkbox nature of Dr. Phillips' opinion provides further support for the ALJ's decision to discount Dr. Phillips' opinion on supportability grounds.

The ALJ also adequately addresses the consistency element. As the ALJ noted, Dr. Phillip's opinions were inconsistent with examinations showing normal strength, tone, and reflexes, as well as the absence of any evidence in the record demonstrating the need for an assistive device. An ALJ properly discusses the consistency element when the ALJ notes that a physician's opinion is inconsistent with other treatment notes in the medical record. *See McMillen v. Comm'r of Soc. Sec.*, No. 1:20-cv-2531, 2022 WL 1215495, at *15 (N.D. Ohio Mar. 11, 2022), *report and recommendation adopted sub nom.*, 2022 WL 1212839 (N.D. Ohio Apr. 25, 2022) (holding that ALJ adequately addressed consistency factor by noting that physician's opinion was

18

inconsistent with largely normal physical examination findings in claimant's records); *Marlowe v. Comm'r of Soc. Sec.*, No. 1:22-cv-1020, 2023 WL 2541436, at *10 (N.D. Ohio Feb. 21, 2023), *report and recommendation adopted*, 2023 WL 2538901 (N.D. Ohio Mar. 16, 2023) (holding that ALJ addressed consistency factor by finding that physician's opinion was inconsistent with other treatment notes).

Moreover, a reviewing court reads an ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). Elsewhere in the decision, the ALJ noted that Mr. Hurst displayed normal lumbar range of motion with tenderness in December 2019; showed normal strength and no pain with hip compression in August 2020; and had a negative straight leg raise test, no spasm with passive range of motion, normal sensation and gait, and an ability to perform heel-toe and tandem walking in May 2021. (Tr. 21-22). That discussion provides additional support for the ALJ's determination that Dr. Phillips' opinions were not consistent with the medical record as a whole.

Mr. Hurst does not argue that the ALJ failed to address the supportability or consistency elements at all. Instead, Mr. Hurst argues that the ALJ's decision is not supported by substantial evidence because other evidence in the record, including the opinions of Dr. Tonks and Dr. Lakin, were allegedly consistent with Dr. Phillips' opinion and would support a more restrictive RFC. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept.

29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). I conclude that substantial evidence supports the ALJ's RFC and will not disturb the ALJ's findings simply because other evidence in the record may have supported a different conclusion.

Finally, Mr. Hurst argues that the ALJ's rejection of Dr. Phillips' opinions was not supported by substantial evidence because the ALJ found the opinions of Dr. Tonks slightly persuasive and the opinions of Dr. Lakin generally persuasive. Mr. Hurst argues that, like Dr. Phillips, both Dr. Tonks and Dr. Lakin opined that Mr. Hurst had restrictions in his ability to stand and walk, and asserts that the opinions of Dr. Tonks and Dr. Lakin are consistent with and bolster Dr. Phillips' own opinions.

To the extent Mr. Hurst is arguing that the ALJ was required to credit Dr. Phillips' opinions simply because the ALJ gave some weight to the opinions of Dr. Tonks and Dr. Lakin, Mr. Hurst's argument is without merit. As the Commissioner correctly notes, the ALJ found Dr. Tonks' opinions only slightly persuasive because they were vague and because Dr. Tonks did not identify any specific functional limitations. (Tr. 23). It is true, as Mr. Hurst notes, that the ALJ found Dr. Lakin's opinion generally persuasive, and that Dr. Lakin opined that Mr. Hurst could only occasionally sit or stand. (Tr. 450). The ALJ incorporated Dr. Lakin's opinion by limiting Mr. Hurst to sedentary work (Tr. 20), which is defined as work that only requires occasional walking and standing. *See* 20 C.F.R. § 416.967(a). Dr. Phillips, however, opined that Mr. Hurst could only sit for two hours, while Dr. Lakin opined that Mr. Hurst could sit continuously. (Tr. 450). The former would preclude sedentary work while the latter would not. *See* 20 C.F.R. § 416.967(a) (noting that "a sedentary job is defined as one which involves sitting"). There is thus no inconsistency between the ALJ's decision to find Dr. Lakin's opinion generally persuasive and her decision to reject Dr. Phillips' opinion as unpersuasive, unsupported, and inconsistent with the

record as a whole. I therefore recommend that the Court reject Mr. Hurst's first assignment of error.

### 2.    SSR 16-3p

In his second assignment of error, Mr. Hurst argues that the ALJ failed to properly apply SSR 16-3p, which governs the Commissioner's evaluation of a claimant's subjective symptoms. In particular, Mr. Hurst argues that the ALJ failed to properly credit his hearing testimony that he cannot stand for more than 10 to 15 minutes at a time as a result of a broken screw in his back, daily back pain, issues with his left hip, and a torn meniscus in both knees.

SSR 16-3p provides that the SSA will conduct a two-step process in considering a claimant's symptoms. 2017 WL 5180304, at *3 (Oct. 25, 2017). At step one, the SSA determines whether the individual has one or more medically determinable impairments that could reasonably be expected to produce the individual's alleged symptoms. *Id*. If so, at step two, the SSA evaluates the intensity and persistence of a claimant's symptoms, such as pain, to determine the extent to which those symptoms limit the claimant's ability to work. *Id*. at *4.

With respect to a claimant's subjective statements, SSR 16-3p provides that the SSA will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. SSR 16-3p identifies seven factors that the SSA will consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id*. at *7-8. "The ALJ need not analyze all seven factors but should

21

show that she considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D. Ohio Apr. 4, 2023), *report and recommendation adopted*, 2023 WL 5602726 (N.D. Ohio Aug. 30, 2023).

Notably, "[a] plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022); *see also Jones*, 336 F.3d at 476 ("an ALJ is not required to accept a claimant's subjective complaints"). Moreover, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). However, the ALJ's determinations must be reasonable and supported by evidence in the record. *See Zingale*, 2022 WL 824148 at *8; *Kurman v. Comm'r of Soc. Sec.*, No. 1:20-cv-01837, 2022 WL 765072, at *3 (N.D. Ohio Mar. 14, 2022) ("The ALJ's decision . . . must be rooted in the record and must contain specific reasons for the weight given to the [claimant's] symptoms.") (quotations omitted).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21). The ALJ also found that Mr. Hurst's statements concerning his impairments and their impact on his ability to perform work were "somewhat inconsistent with the other medical evidence of record." (Tr. 24). The ALJ acknowledged that Mr. Hurst was not "symptom free" and experienced "difficulty in performing some tasks." *Id*. The ALJ also found, however, that "the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded him from performing all work on a regular and continuing basis at

22

any time from the alleged onset date of disability." *Id*. In particular, the ALJ noted that, "[w]hile imaging studies showed some positive findings, the claimant retains normal strength and sensation, with no noted reflex changes." *Id*. The ALJ also stated that she had considered "[t]he onset, nature, intensity, and duration of symptoms, as well as precipitating and aggravating factors" and had factored them into Mr. Hurst's RFC. *Id*.

Mr. Hurst argues that the ALJ "failed to articulate any supportable rationale for her finding that Plaintiff's statements and the evidence . . . were not supportive of the fact that he would be precluded from engaging in substantial gainful activity on a full-time basis." (ECF No. 8, PageID # 712). I disagree. Rather, the ALJ properly considered the evidence as a whole, including evidence that Mr. Hurst retained normal strength and sensation, in applying SSR 16-3p and evaluating Mr. Hurst's subjective statements. As noted above, the ALJ also referenced additional evidence supporting her decision elsewhere in the opinion, including records indicating that Mr. Hurst displayed a normal lumbar range of motion; normal strength and no pain with hip compression; normal sensation and gait; and an ability to perform heel-toe and tandem walking. (Tr. 21-22). The ALJ's evaluation of Mr. Hurst's subjective complaints is therefore supported by substantial evidence. *See Young v. Comm'r of Soc. Sec. Admin*., No. 5:21-cv-00761, 2022 WL 17546359, at *6 (N.D. Ohio Dec. 9, 2022) (holding that ALJ complied with SSR 16-3p where ALJ evaluated the intensity and persistence of claimant's symptoms and determined extent to which those symptoms limited claimant's ability to perform work activities); *Myers v. Comm'r of Soc. Sec. Admin*., No. 1:21-CV-02381-SL, 2022 WL 18636593, at *8 (N.D. Ohio Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 369435 (N.D. Ohio Jan. 24, 2023) (holding that ALJ complied with SSR 16-3p where ALJ considered claimant's subjective complaints of pain but did not find pain disabling). To the extent Mr. Hurst believes that other evidence would have supported a more restrictive RFC or that the ALJ should have weighed the evidence differently, it is not a

reviewing court's role to second-guess the ALJ's judgment. *See O'Brien*, 819 F. App'x at 416. Accordingly, I recommend that the Court reject Mr. Hurst's second assignment of error.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

Dated: December 28, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

24

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).